**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAQUISE EVANS, | ) | |
| | ) | Case No. 15 CV 7461 |
| Plaintiff, | ) | |
| | ) | Judge Pallmeyer |
| v. | ) | |
| | ) | Magistrate Judge Kim |
| OFFICER SALVADOR (Star # 19142), | ) | |
| Individually, and the CITY OF CHICAGO | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

<u>**DEFENDANTS' MOTIONS *IN LIMINE***</u>

Defendants Richard Salvador and the City of Chicago (collectively, "Defendants"), by and through one of their attorneys, move this Court *in limine* on the following matters.

**I.      Defendants' Opposed Motions *in limine***

**1.      To bar evidence or argument of racial bias or motivation.**

Defendants seek to bar any potential argument or testimony that the alleged misconduct of Defendant Salvador or any other non-defendant officers towards Plaintiff was racially motivated. Discovery has revealed no evidence whatsoever that this incident was a hate crime or occurred because Defendant was racist. Any such testimony or argument is of no relevance, and would serve only to inflame the jury against Defendants, thereby leading to unfair prejudice to Defendants. *See* Fed. R. Evid. 401, 402, and 403.

1

**2.      To bar reference to police officers as "professional witnesses" or that they are being paid to testify.**

Plaintiff has listed a number of Chicago Police Department personnel as witnesses to be called in his case, including the Defendant, and will request Defendants produce those witnesses at trial. Thus, Plaintiff is relying on the City to produce Chicago Police Department personnel to testify in his case. It would be disingenuous for Plaintiff to then elicit testimony that these or other police personnel are being paid for their time spent in court, that their "job" is to give testimony, or that they are trained to testify. Furthermore, any such testimony is not relevant to the merits of this case and is therefore in admissible pursuant to Federal Rules of Evidence 401, 402.

**3.      To bar evidence or argument that no in-car camera or body-worn camera captured the incident.**

Defendants move to bar any reference to the fact that no in-car camera captured the incident at issue in this lawsuit on video. It is undisputed that no car on the scene, including the car driven by Defendant Salvador, was equipped with an in-car camera. It is also undisputed that, at the time of the incident, no Chicago police officer had been issued a body-worn camera. No malfeasance on the part of Defendant Salvador (or any non-defendant officer) caused this incident to go uncaptured by cameras. Had this sort of malfeasance occurred, Plaintiff would surely be asking for a missing evidence instruction to the effect that the jury can infer that whatever would have been captured on video would have been unfavorable to Defendants.

Allowing Plaintiff to allude to fact that this incident was not recorded would invite the jury to make the same inference as in the missing evidence instruction, even

though Defendants had not committed any bad acts to justify such an inference here. Such an argument by Plaintiff is unduly prejudicial to Defendants and risks confusing the jury of what burdens each side carries, and this argument should be barred.

**4.     To bar evidence that Defendant Salvador will be indemnified by the City.**

Any comment on indemnification by the City of Chicago should be precluded. Whether or not the City indemnifies the Defendant Salvador is completely irrelevant to the issue of whether the Defendant Salvador is liable for any acts he may have performed that proximately caused an injury to Plaintiff. Plaintiff brings no *Monell* claim against the City and makes no allegation that any City employee other than the Defendant Salvador engaged in wrongdoing. Since there is no claim against the City, the only true parties to the case for the claims alleged is Defendant Salvador. Allowing Plaintiff to make such a connection would be highly prejudicial.

It is undisputed that the City has agreed to indemnify Defendant Salvador for any compensatory damages assessed in this case. Thus, the only reason to mention the City is to signal to the jury that "deep pockets" are available to pay any judgment. Such a signal runs afoul of federal and Illinois law that evidence of indemnification against liability is inadmissible as irrelevant and highly prejudicial to the issue of liability. Fed. R. Evid. 411; *Walker v. Saenz*, No. 91 C 3669, 1992 WL 317188, *3 (N.D. Ill. Oct. 27, 1992).

Knowledge that the City of Chicago will indemnify Defendant Salvador for possible damages might encourage jurors to find for Plaintiff—regardless of the facts

3

presented at trial. Such knowledge can also lead jurors to inflate an award out of sympathy or other irrelevant factors.

Plaintiff has agreed not to offer this evidence if Defendant Salvador does not offer evidence of his financial condition as a defense to an award of punitive damages against him. Defendants agree that, if Defendant Salvador presents such evidence, Plaintiff should be allowed to offer evidence that Defendant Salvador is being indemnified by the City for any compensatory damages.

**5.     To bar evidence or argument that Plaintiff was denied medical care.**

Plaintiff should be barred from introducing testimony, evidence or argument regarding any officer's decision to call for an ambulance to provide emergency care to Plaintiff, but not to provide first aid to the Plaintiff himself.  Plaintiff may argue that Defendant Salvador or other Chicago Police Officers on scene had a duty to perform first aid measures on Plaintiff prior to the arrival of the paramedics. That argument is incorrect for several reasons. Neither federal nor Illinois law requires police officers to perform first aid. Rather, 745 ILCS 10/4-105 (1998) finds public employees liable only if they know a prisoner is in need of medical care and, through willful and wanton conduct, fail "to take reasonable action to summon medical care."  Here, it is undisputed that an ambulance was called for Plaintiff immediately after the shooting, and paramedics arrived to provide first aid to Plaintiff. Furthermore, Plaintiff does not bring a claim for failure to provide medical care, so this argument is irrelevant under Fed. R. Evid. 401.

**6.     To exclude witnesses from the courtroom.**

In accordance with Federal Rule of Evidence 615, Defendants move to exclude all non-party witnesses from the courtroom. Plaintiff has indicated that they are in agreement with this motion with the exception of their expert, Joseph Stine, whom they would like to observe the trial. Defendants move to exclude all witnesses, including Stine.

Rule 615 calls for the exclusion of all witnesses, with few exceptions. None of the exceptions cover expert witnesses generally. Instead, the party must show that the expert's presence is "essential to presenting the party's claim or defense." Fed. R. Evid. 615(c). The mere fact that the person is an expert is not enough to meet the test for being "essential," nor does Rule 703 provide an "automatic exemption" from exclusion. *See United States v. Olofson*, 563 F.3d 652, 660 (7th Cir. 2009) (affirming the decision to exclude an expert witness as within a district court's discretion). In this case, Stine has read many depositions and drafted a lengthy report. That report, in accordance with Rule 26(a)(2)(B)(1), is a "complete statement of *all opinions*" that Stine will express; Stine cannot go beyond the report, even if new facts arise at trial. Therefore, nothing can be gained from having Stine watch the evidence come in, and Stine should also be excluded.

**7.    To bar evidence or argument regarding the quality of the investigation done by the Chicago Police Department or Independent Police Review Authority.**

Plaintiff should be barred from mentioning the investigation of the incident by the Independent Police Review Authority ("IPRA") or its successor, the Civilian Office of Police Accountability ("COPA"), and making any reference to an "internal

investigation" or similar terms regarding the incident alleged in the complaint.[1]  The IPRA/COPA investigation into the allegations raised by this lawsuit is entirely irrelevant to the claims, is prejudicial in that it could be used to suggest that the officers involved in this matter did something wrong, and would confuse the jury, as it may suggest that if any investigation took place, it was only done because some sort of misconduct occurred.  Reference to any internal investigation would unduly prejudice Defendant Salvador by creating an improper negative inference that he engaged in some form of wrongdoing bearing disciplinary scrutiny by an internal agency.  *See Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 818 (N.D. Ill. 2010) (barring evidence that OPS investigated incident involving Plaintiff); *Delgado v. Mak*, No. 06 C 3757, 2008 WL 4367458, at *2 (N.D. Ill. 2008) (finding that potential prejudice from testimony regarding internal affairs investigation substantially outweighed its probative value and barred this evidence); *Sallenger v. City of Springfield*, No. 03-3093, 2007 WL 2683791, at *1 (C.D. Ill. 2007) (finding that evidence related to internal investigations, or lack thereof, and any outcome, was inadmissible as its probative value is outweighed by danger of unfair prejudice if admitted as there was substantial risk of jury confusion or possibility that the jury would base its decision on improper basis).

The Seventh Circuit has not recognized an allegation of "inadequate police investigatory work" as a civil rights claim in the absence of another recognized constitutional right.  *Jacobson v. Nat'l R.R. Pass. Corp.*, No. 97 C 6012, 1999 WL 1101299, at *10 (N.D. Ill. 1999); *see also David v. Vill. of Oak Lawn*, 954 F. Supp. 1241, 1245-46 (N.D.

---

[1] Defendants do not object to the use of any statement given during the investigation for impeachment purposes as long as the parties do not refer to "IPRA" or "COPA" specifically.

Ill. 1996) (holding that plaintiff did not have constitutional right to have his complaints investigated). There is no *Monell*-type claim alleged by Plaintiff in this matter regarding the City's policies or procedures. Therefore, this motion should be granted because the proposed evidence is irrelevant, consists of inadmissible hearsay, lacks foundation, its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues, and constitutes a subsequent remedial measure. *See* Fed. R. Evid. 401, 402 and 403.

**8. To bar evidence or argument that any particular officer was improperly trained or disciplined.**

Defendants seek to bar Plaintiff from arguing or eliciting testimony that the City of Chicago improperly trains, disciplines, monitors or controls police officers. Such information is irrelevant to the issues in this case, is highly prejudicial, and is likely to confuse the jury. Fed. R. Evid. 401 and 403. In Illinois, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Thus, if the Individual Defendants are not liable to Plaintiff in the instant case, neither can the City be liable to Plaintiff. *See Guidry v. Boyd*, No. 06 C 1600, 2007 WL 2317174, *15 (N.D. Ill. July 17, 2007).

Furthermore, no separate policy claim exists against the City of Chicago. To impose liability on a municipality under §1983, Plaintiff must comply with the framework established by the Supreme Court in *Monell v. New York City Dep't of Social Services*, in which the purported constitutional injury must be proximately caused by the execution of an official government policy or custom. 436 U.S. 658, 694 (1978).

Plaintiff brings no claim that municipal policy or custom was the direct cause of his alleged constitutional injuries. Therefore, any reference, question or testimony that would imply or suggest that the City improperly trains, disciplines or investigates police officers should be barred.

**9.     To bar reference to results of testing done by the Illinois State Police crime lab without introducing that evidence first through a witness from the ISP.**

Defendants move to bar any testimony, evidence, argument, or innuendo from Plaintiff or Plaintiff's counsel or any witness that there are no latent prints or DNA on the recovered firearm unless they call a scientist from the Illinois State Police who did the specific testing on that item.  To do so, without any foundation, would mislead the jury into believing that latent prints are always detected and recovered from items submitted for testing, when that is not the case.  In fact, Defendants expect that the forensic scientists in these disciplines would testify that it is actually quite common that latent prints are not detected or recovered from items, and that does not mean that a person did not handle the particular item. Furthermore, Defendants expect that the forensic scientist that tested the firearm for DNA evidence would testify that low levels of human DNA were found on the firearm, just not in a quantity that was able to be tested. In both cases, Plaintiff's counsel asking a non-ISP witness to agree that Plaintiff's fingerprints or DNA were not found on the firearm recovered would be misleadingly incomplete. Therefore, if Plaintiff seeks to introduce evidence that no latent prints or DNA were recovered from the firearm, the forensic scientist must be called to testify.

**10.     To bar the use of graphic photographs.**

Defendants move to bar the use of graphic demonstrative photographs that depict individuals undergoing surgical procedures that Plaintiff also underwent. There is no dispute regarding what medical treatment Plaintiff was provided in the days following the incident, and pictures of such a graphic nature would only serve to prejudice the jury against Defendants by garnering sympathy for Plaintiff. There is no evidence that Plaintiff was awake for any of the medical procedures that these pictures depict. Plaintiff cannot even claim, at this point, that the pictures will assist the medical treaters to explain their testimony, as no treaters have been deposed. Accordingly, these pictures should be barred under Rules 401 and 403.

Plaintiff also cannot prove at this point that these pictures are what they purport to be, that is, that they actually depict the procedures that they claim to depict, or that the pictures depict the procedures as they actually looked when they were being performed on Plaintiff. Accordingly, these pictures cannot pass the test for admissibility set by Rule 901. For either reason, these photographs should be barred.

Defendants also move to bar the use of graphic photographs that depict Plaintiff in the hospital in the days following the incident. These photographs have no probative value, and would also only serve to prejudice the jury by garnering sympathy for the Plaintiff. Accordingly, these pictures should also be barred under Rules 401 and 403.

**11. To bar testimony regarding Plaintiff's prior experiences with police officers.**

Defendants move this Court to bar any testimony, evidence, argument, or innuendo from Plaintiff or Plaintiff's counsel or any witness that they had personally

experienced police misconduct in other instances with Chicago police officers or any other police officer or law enforcement official. This is including, but not limited to, Plaintiff, Clifford Evans, Fabrian Murphy, Jacobie Evans, and Clifford Evans, Jr. This evidence would be overly prejudicial to Defendants, and not relevant to the only claim in this lawsuit as to whether or not Salvador's use of force was excessive.

**12.    To bar testimony or argument that pursuing Plaintiff was improper or violated his rights.**

Defendants move to bar any testimony or argument that Defendant Salvador or any non-defendant officer acted improperly or violated Plaintiff's rights when they pursued Plaintiff after Plaintiff ran from them. As further explained in Defendants' motion to bar Plaintiff's expert [ECF No. 97-1], an officer can approach a person on the public way without any level of suspicion (*see Florida v. Royer*, 406 U.S. 491, 497 (1983)), and Plaintiff was not seized here until he was shot. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991). Accordingly, there is no claim in this case for any pre-shooting conduct by Defendant Salvador, nor could such a claim have survived. To allow Plaintiff to argue that pursuing Plaintiff was improper, or that Defendant Salvador could or should have just let Plaintiff go, confuses the issues in the case and could mislead the jury into a finding of liability based on conduct that was actually legal.

Furthermore, even if Plaintiff were correct that Salvador should not have pursued Plaintiff, that alone cannot imply a finding of liability for Plaintiff's shooting. *See County of Los Angeles v. Mendez*, 581 U.S. ___, 137 S.Ct. 1539 (2017). In either case, this argument should be barred.

13.     **To bar cross-examination regarding the Fraternal Order of Police disclaimer given in statements made by police officers to IPRA/COPA.**

Defendants move this Court to bar any reference to the Fraternal Order of Police ("FOP") Disclaimer given by Defendant and other Chicago Police Officers in their responses and interviews during the investigation by IPRA/COPA of this matter. As a matter of course, IPRA/COPA opens a "U-file" on every police shooting where an officer has discharged his weapon and hit another person. As part of this investigation, the individuals involved are required by IPRA/COPA to provide statements regarding the shooting. Lodge No. 7 of the Fraternal Order of Police, the bargaining unit for police officers in the Chicago Police Department, instructs its members to provide a disclaimer before completing reports or statements related to internal police department investigations. This disclaimer essentially states that the officer is not providing the statement voluntarily, but is doing so based on the direct order of a superior officer. Such a disclaimer allows police officers to protect their Fifth Amendment right against self-incrimination while allowing the Chicago Police Department to conduct internal investigations of allegations of police misconduct. *See Garrity v. State of New Jersey*, 385 U.S. 493, 494 (1967).

Defendant anticipates that Plaintiff may seek to use the statements of some police officers from the IPRA/COPA investigation.  Each of these statements includes a disclaimer that the statements were not provided voluntarily in response to the allegations in the IPRA/COPA investigation.  The disclaimer is not relevant to a determination of the material issues under consideration by the jury in these matters,

11

pursuant to Fed. R. Evid. 401, because the fact that police officers asserted their Fifth Amendment rights in an internal investigation of the Chicago Police Department has no bearing on any fact at issue in this lawsuit. As the disclaimer is irrelevant, any evidence or argument about the disclaimer is inadmissible under Fed. R. Evid. 402.

Furthermore, this Court should bar any evidence or argument about this disclaimer pursuant to Fed. R. Evid. 403, as its probative value is outweighed by the dangers of unfairly prejudicing Defendant, misleading the jury, confusing the issues and wasting time on collateral issues that do not bear on the ultimate issues presented in this case. Plaintiff's introduction of the disclaimer together with the officers' statements will raise numerous negative inferences which will unfairly prejudice Defendants (e.g., the statement was not voluntary, the statement was given under duress, and implicates the officers' exposure to criminal liability, etc.). The disclaimer would likely mislead the jury to infer that the officer's statement exposes him or her to criminal prosecution and was not voluntarily provided. The unfair consequence of such questions concerning the disclaimer is that the jury may be left with the impression that the officer has something to hide and failed to provide truthful responses to the IPRA/COPA investigation. If the jury were so confused or misled, substantial unfair prejudice would result to Defendant.

Additionally, if Plaintiff introduces the disclaimer together with the officers' statements, Defendants will be forced to introduce witnesses and documents from the officers' union to explain why the disclaimer appears in statements and reports. In particular, Defendants will offer evidence concerning Lodge No. 7 and the basis for its

instruction to include the disclaimer with all statements prepared in connection with IPRA investigations. Such an explanation would entail presenting evidence concerning the implications of exercising the right against self-incrimination under the Fifth Amendment which arise from being ordered to make a statement. Any evidence concerning the purpose, rationale, and consequences of the disclaimer will result in wholly collateral litigation concerning the legitimacy and necessity of the disclaimer.

Defendants will be unfairly prejudiced by any reference whatsoever to the disclaimer the officers stated in their interviews for the IPRA/COPA investigation in this case. In addition, the trial will be unduly lengthened as a consequence of these side issues and corresponding witnesses, and the introduction of the evidence will only serve as a distraction to the jury and will not assist the jury in deciding the excessive force and malicious prosecution claims presented before it. For these reasons, this Court should bar Plaintiff from referring to the disclaimer if any Officer's IPRA/COPA statement is offered into evidence during the trial or used for purposes of cross-examination.

**14.     To bar argument that Defendants did not call any specific witness.**

Defendants move to bar Plaintiff from arguing that Defendants failed to call any witness at trial in this case. In a civil case, Plaintiff bears the burden of proving her case by the preponderance of the evidence. Defendants, therefore, have no obligation to put on a defense or call witnesses to support a verdict in their favor. Furthermore, Defendants are under no duty to call any witnesses at trial, and any argument to the contrary by Plaintiff would improperly shift the burden of proof to Defendants.

**15.    To bar the testimony of Plaintiff's witness Mila Carlson.**

Defendants move to bar the testimony of Mila Carlson, a witness that Plaintiff

may call at trial. Ms. Carlson was disclosed as part of expert discovery as a Rule 26(a)(2)

expert witness, but at Ms. Carlson's deposition, she testified repeatedly that she formed

no expert opinions in this case. Deposition of Mila Carlson, attached as Exhibit A, 34:1-

24. Instead, Ms. Carlson said that she was "looking at the records that were provided. I

was documenting information that were in the medical records and doing research for

those types of procedures and potential complications." Ex. A, 34:5-9. Essentially, Ms.

Carlson interpreted and summarized the very same medical records that Plaintiff has

named seven treating physicians to testify about. Accordingly, Ms. Carlson's testimony

would merely be duplicative of these treaters' testimony, and Ms. Carlson should be

barred under Rule 403.

**16.    To bar argument that Defendant Salvador and/or any non-defendant
police officers were involved in a conspiracy to violate Plaintiff's civil rights, or to
cover up a violation of Plaintiff's civil rights.**

Plaintiff should be barred from presenting any testimony, evidence, or argument

that Defendant Salvador or any other police officers were involved in a conspiracy or

conspired to violate the Plaintiff's civil rights because such evidence is irrelevant and

would only serve to inflame the jury and unfairly prejudice Salvador while confusing

the actual claims at issue.  *See* Fed. R. Evid. 401, 402, and 403.  In this case, there is no

claim for conspiracy or any other issue relating to a conspiracy for a jury to decide in

this case. Thus, because such evidence would be irrelevant, unfairly prejudicial, and

potentially misleading to the jury, such evidence should be barred pursuant to Fed. R. Evid. 401, 402, and 403.

**17.    To bar reference to internal Chicago Police Department directives or general orders.**

Defendants anticipate that Plaintiff may question witnesses about the Chicago Police Department's internal directives, rules or regulations, such as the CPD's General Orders on Use of Force or the Code of Conduct. Defendant seeks to bar Plaintiff from questioning or eliciting testimony in this area from any witness, including, but not limited to Joseph Stine, Plaintiffs' police procedures expert.

CPD General Orders contain written directives for police activities both in specific situations and for general conduct. Any attempt to introduce General Orders on the Use of Force promulgated by the CPD in an attempt to suggest that Defendants violated the internal procedures of the CPD in the course of their contact with decedent would be improper because such evidence is irrelevant, would lead to confusion of the jury and any probative value would be substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 401, 402 and 403. Defendants respectfully request that this Court bar all references to CPD General Orders and the Police Code of Conduct.

Introduction of evidence relating to General Orders would be improper because "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006)*; see also Davis v. Scherer*, 468

U.S. 183, 194 (1984); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1048-49 (7th Cir. 1995); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988) (violations of state statutes, local ordinances, and administrative or department regulations do not give rise to §1983 action). Moreover, "it may be that [the Defendant's] possible violation of the CPD's General Orders is of interest to his superiors when they are making discipline, promotion or salary decisions, but that information was immaterial in the proceedings before the district court and was properly excluded." *Thompson* at 455. Courts look to federal law, not state or municipal regulations, to determine the existence and scope of personal liberties and protected by the due process clause of the fourteenth amendment and the "reasonableness" standard under the Fourth Amendment. *See Archie v. City of Racine*, 847 F.2d 1211, 1215-18 (7th Cir. 1988)(*en banc*); see also *Graham v. Connor*, 490 U.S. 386, 393-95 (1989); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992) ("under §1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force").

The internal police guidelines are also irrelevant to Plaintiff's state law claims. Under Illinois law, a violation of self-imposed rules or internal guidelines, such as police department regulations and general orders, do not normally establish or impose a legal duty. *Morton v. City of Chicago*, 286 Ill.App.3d 444, 454 (1st Dist. 1997); *Blakenship v. Peoria Park District*, 269 Ill.App.3d 416, 422-23 (3rd Dist. 1995). A jury presented with such a "violation" would have difficulty separating the purported rules violation, for which Plaintiff has no claim, from the alleged constitutional or state law violation issues on which the jury is deciding liability and damages. There is a clear risk that a juror

16

presented with evidence of a rules violation would assume, in spite of any instructions to the contrary, that a constitutional violation had occurred. The resulting jury confusion would only serve to obscure the central issues in this case. Accordingly, Plaintiff should not be permitted to interject the possibility of a rules violation into these proceedings. Fed. R. Evid. 401, 402 and 403.

**18.** **To bar evidence regarding alleged misconduct on the part of non-defendants.**

Defendants move to bar any testimony, evidence, argument, or innuendo from Plaintiff, Plaintiff's counsel, or any witness, that any non-Defendant Officers, non-Defendant Chicago Police Department personnel in this matter, or any other City of Chicago employee engaged in any misconduct or caused any injury to Plaintiff in any manner. Defendant Salvador cannot be held liable for the actions of another person. *Martin v. Tyson*, 845 F.2d 1451, 1455 (7th Cir. 1988); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Walker v. Rowe*, 791 F.2d 507, 508 (7th Cir. 1986).

To allow any testimony or argument with regard to alleged wrongdoing by another City of Chicago Police Officer or other City of Chicago employee invites the jury to find against Defendant Salvador if they wanted to compensate Plaintiff for any such alleged wrongdoing and/or to punish Defendant Salvador for the alleged actions of another individual. Accordingly, Plaintiff, his counsel, and witnesses must be barred from mentioning or referring to any alleged misconduct by any non-defendant Officers, Chicago Police Department personnel, or any other City of Chicago employee.

**19.** **To bar generalized evidence regarding a "code of silence."**

17

Defendant seeks to bar Plaintiff from offering any testimony, evidence or argument that police officers generally lie, conspire, cover up, or otherwise maintain a "code of silence" to protect their fellow officers.

This Court should exclude such terminology or argument because it is not relevant to the jury's determination of credibility of the police testimony in this case and would only serve to prejudice Defendant. Plaintiff may attempt to introduce at trial generalized testimony, evidence, or argument of an alleged police "code of silence maintained by the Chicago Police Department and/or police in general to protect fellow officers of wrongdoing. However, evidence is admissible at trial only if it makes the existence of any facts that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Moreover, even relevant evidence should be excluded where its prejudicial effect outweighs its probative value. Fed. R. Evid. 403.

Generalized allegations of a police "code of silence" or that police officers cover up for other police officers "...are akin to the conclusion that all mechanics, when they have the opportunity, assess over-charges for unnecessary repair; that all politicians, when the public's back is turned, accept bribes; and that all taxpayers, when they think they can get away with it, cheat on their taxes -- and no one ever tells. In a court of law, however, justice is dispensed based on evidence of articulated and proven facts, not on generalized assumptions and prejudices." *Sanders v. City of Indianapolis*, 837 F. Supp. 959, 963 (S.D. Ind. 1992). The sole purpose for the introduction of this testimony is to invoke images in the minds of jurors that officers run amok to protect their own. The

18

jury's decision, however, must be based upon facts, not upon speculation or rumination of witnesses regarding the general nature of police officers. In that regard, this evidence is no different from bad acts evidence, except that it is more illusory because it has no particular connection to Defendant Salvador.

Furthermore, even if general evidence of a police "code of silence" were somehow relevant to matters at issue or the credibility of the testimony in this case, this Court should nonetheless exclude such evidence because its prejudicial effect substantially outweighs its probative value. *See Caldwell v. City of Chicago*, 08 C 3067, 2010 WL 380696 at *3 (N.D. Ill. 2010) (barring plaintiff from presenting evidence showing police generally cover up for each other and that there is a code of silence in the Chicago Police Department). Furthermore, Plaintiff lacks foundation to make this argument and has neither pursued nor produced any credible evidence to substantiate such an argument. Accordingly, pursuant to FRE 401, 402, and 403, Plaintiff should be barred from presenting at trial any testimony, evidence, or argument that police officers, in general lie, conspire, cover up, or otherwise maintain a "code of silence" to protect their fellow officers. Fed. R. Evid. 401, 402 and 403.

**20.    To bar the audio from a third-party video.**

Defendants believe that Plaintiff may play a video taken by a third-party that depicts the scene after Plaintiff was shot. The audio that accompanies the video should not be played, and Defendants move to bar the audio.

Multiple voices can be heard on the video, but the record contains no testimony regarding who many of the speakers are. One voice, seemingly of Plaintiff, can heard to

19

say "I can't breathe" twice. This is inadmissible for the reasons discussed above in Defendant's motion number 5, regarding any failure to provide medical care. At the time Plaintiff can be seen making these statements, an ambulance had already been called. Any perceived inaction on the part of a police officer is irrelevant to the issues of the case, and can only serve to prejudice the Defendants. The audio should not be allowed to be played.

The audio also features statements made by other, unknown, individuals, all of which are inadmissible. One voice can be heard to say "he ain't even got shit," a statement that is hearsay without an exception. This statement should, therefore, not be allowed to be played for the jury. *See* Fed. R. Evid. 801, 802. The same voice calls the police officers on scene "dumb dirty motherfuckers," a statement that is not probative of anything, but that may serve to prejudice the jury against Defendants and should also be barred. *See* Fed. R. Evid. 403. A different voice repeats, multiple times, "he can't breathe," another inadmissible hearsay statement.

None of the statements heard on the video are admissible, for a variety of reasons. Even if the Court found that certain statements were admissible, it would be difficult to isolate those statements and play the audio only for those statements, and the jury would be left to wonder why the video had clear audio at times, but no audio at others. This would also potentially be prejudicial to Defendants, as the jury may be tempted use their imagination to fill in the gaps—inference that would be improper. This would cause them to decide the case on a basis other than the evidence. For these reasons, the audio should not be played.

**II.     Defendants' Agreed Motions *in limine***

**1.     To bar reference to other publicized events concerning allegations of police misconduct.**

Defendants move to bar reference to other events regarding alleged police misconduct, such as highly publicized incidents like Michael Brown (Ferguson, MO), Laquan McDonald (Chicago, IL), the recently publicized Chicago police task force findings, the United States Department of Justice "Pattern and Practice" investigation of the Chicago Police Department, and the Mayor's proposed changes, among others. Such incidents have placed the issue of allegations of police misconduct before the public by way of extensive media coverage, such that law enforcement personnel are often depicted in an unfavorable, and even hostile, manner. Defendants do not condone any alleged misconduct and should not be forced to defend the conduct of others in this Court. Plaintiff has indicated that he does not intend to make any such argument, and such argument should be barred.

**2.     To bar reference to the fact that defense counsel are employed by the City of Chicago and are being provided free of charge.**

Defendants move to bar reference to Defendant's lawyers as "City lawyers" or any similar term that would associate them with the City of Chicago. Defendants further move to bar any argument that Defendant Salvador's attorneys are being provided free of charge. Either argument would serve to improperly highlight Defendant Salvador's association with the corporate, "deep pocket" defendant. *See* Fed. R. Evid. 403. Plaintiff has indicated that he does not intend to make such arguments.

**3.     To bar evidence of prior lawsuits and Complaint Registers.**

Defendants move to bar evidence of prior lawsuits or Complaint Register investigations that have involved Defendant Salvador or any non-Defendant police officer. Defendants move to bar this evidence as improper character evidence under Fed. R. Evid. 404(b). Plaintiff has indicated that they do not intend to offer such evidence, and the motion should be granted.

**4. To bar argument that the jury should "send a message" to the City with its verdict.**

As a matter of law, Plaintiff cannot collect punitive or exemplary damages from the City of Chicago as a result of the incident which forms the basis of this lawsuit. 745 ILCS 10/2-102. Sending a message, or punishment, cannot form the basis for any damages other than punitive damages. *See Cobige v. City of Chicago*, 06 C 3807, Dkt. No. 215, Jan. 14, 2010 (St. Eve, J.) (*citing Ramirez v. City of Chicago*, 05 C 317, 2009 WL 3852378, *3 (N.D. Ill. Nov. 17, 2009). Any argument implying that the jury should admonish or send a message to the City would be an improper request for punitive or exemplary damages. Plaintiff should therefore not be permitted to argue or imply to the jury that these concerns can serve as a basis for its award.

**5. To bar attorneys from talking to witnesses while under oath.**

Defendants request that once a witness is called to testify, no attorney shall confer with that witness about his or her trial testimony, until the termination of the testimony.

**6. To bar reference to the City as a defendant.**

Defendants move to bar reference to the City of Chicago as a defendant in this case, and to remove the City of Chicago from the caption of the case for trial. Plaintiff has agreed not to refer to the City as a defendant during trial.

**7.    To bar reference to the area in which the incident occurred as a "high crime" area.**

The parties have agreed not to refer to the area where the incident occurred as a "high crime area." Defendants, however, oppose Plaintiff's motion *in limine* numbers 1 and 2 as overbroad.

Dated: January 5, 2018                          Respectfully submitted,

                                                /s/ Bret A. Kabacinski


City of Chicago Department of Law
30 N. LaSalle Street, Suite 900
Chicago, IL 60602
(312) 742-1842
Attorney No. 6313169

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2018, I electronically filed a copy of the

foregoing **Defendants' Motions in Limine** using the CM/ECF system, which will send

notification of such filing to all counsel of record.


/s/ Bret A. Kabacinski
Bret A. Kabacinski
Assistant Corporation Counsel